**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ANTHONY LLOYD | * | |
| Plaintiff, | * | |
| v. | * | Case No. 8:05-cv-02403-AW |
| JIM KOONS AUTOMOTIVE COMPANIES, *et al.* | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \*

**MEMORANDUM OPINION**

This action involves a suit brought by Anthony Lloyd ("Lloyd" or "Plaintiff") against Jim Koons Management Company, Inc. ("Koons Management"), Kline Tysons Imports, Inc. ("Koons Tysons"), and Basher El-Fiky, ("El-Fiky"), (together, "Defendants") for alleged racial discrimination in connection with the sale and financing of an automobile. Currently pending before the Court is Defendants' Motion to Stay Proceedings in Favor of Arbitration [12]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, this Court will grant Defendants' motion and stay this action pending arbitration.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff is an African-American male. In October 2001, Plaintiff went to Koons Tysons, a Virginia corporation, to purchase an automobile, ultimately deciding upon a 2002 Toyota Camry. In connection with the sale, Koons Tysons offered Plaintiff a $31,536.35 loan with a 16% interest

1

rate.

Plaintiff signed a Buyer's Order, which details the purchase price, sales tax, and sets forth Koons Tysons' agreement to sell the car and Lloyd's agreement to purchase the car. The back of the Buyer's Order form includes an arbitration agreement. Specifically, the arbitration clause provides that "[w]e agree that any claim, dispute or controversy directly or indirectly relating to this agreement or any vehicle involved herein shall be resolved by binding arbitration through the national arbitration forum, under its code of procedure then in effect."

Plaintiff separately signed a Retail Installment Contract, which lays out the information regarding the loan and repayment terms. The Retail Installment Contract does not contain any arbitration agreement. After the contract was signed by Koons Tysons, the contract was automatically assigned to Toyota Motor Credit Corporation.

Plaintiff made timely payments on the loan for one year. Then Plaintiff returned to the dealership to refinance his loan, but his application was rejected. In December 2003, after another year of making timely payments on the car loan, Plaintiff returned to the dealership and again sought refinancing. The finance officer again told Plaintiff that he was not eligible for refinancing.

In September 2005, Plaintiff filed a suit against Defendants, alleging that the unjustified mark-up of his interest rate to 16%, the misrepresentations regarding the quality of his credit score, and the steering to Toyota Motor Credit Corporation were the products of an unlawful effort to target him for a predatory loan because of his race. On November 19, 2005, Defendants filed the instant Motion to Stay Proceeding in Favor of Arbitration.[1] That motion is ripe for review, and the

---

[1]Also pending in this action are Defendants' Motion to Dismiss or, in the Alternative, to Transfer [13] and Plaintiff's Motion for Leave to File Amended Complaint [18]. However, because arbitration of this matter may render those motions moot, the Court will, at the present

Court will now issue an Opinion.

**II       ANALYSIS**

Plaintiff contends that he should not be compelled to arbitrate because (1) his claims stem from Defendants' discrimination in arranging financing for his Toyota Camry and not from the underlying Buyer's Order, where the arbitration provision is found; and (2) even if the arbitration provision in the Buyer's Order covers the Retail Installment Contract, the arbitration provision is unenforceable because it is a product of Defendants' discriminatory and fraudulent conduct and, therefore, is unconscionable. The Court will examine these issues in turn.

**A.       The Scope of the Arbitration Agreement**

Whether a party has agreed to arbitrate an issue is a matter of contract interpretation. Parties cannot "be required to submit to arbitration any dispute which [they have] not agreed so to submit." *AT&T Tech., Inc. v. Comm. Workers of Am.,* 475 U.S. 643, 648 (1986). Nevertheless, the Supreme Court has explained that the Federal Arbitration Act ("FAA") embodies "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hops. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, "any doubts concerning the scope of the arbitrable issues should be resolved in favor of arbitration."*Id.* at 24-25. A court should not deny a request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996).

In deciding whether a given dispute is subject to arbitration, a court must determine (1) whether the parties had a valid agreement to arbitrate, and (2) whether the dispute at hand falls

---

time, address solely the issue of arbitration.

within the substantive scope of the arbitration agreement. *See, e.g.*, *Alamria v. Telcor Int'l Inc.*, 920 F. Supp. 658, 663 (D. Md. 1996).

Here, the existence of a valid arbitration agreement is not genuinely in dispute. The arbitration clause in the Buyer's Order unequivocally provides for binding arbitration in the event of a dispute. Plaintiff, however, contends that the arbitration agreement in the Buyer's Order does not cover the claims in this action, because the claims arise out of the Retail Installment Contract, not the Buyer's Order.

The arbitration provision in Plaintiff's Buyer's Order provides that "any claim, dispute or controversy *directly or indirectly relating to this agreement or any vehicle involved herein* shall be resolved in binding arbitration." Pl.'s Opp'n to Defs.' Mot. to Stay, Ex. B (emphasis added). It constitutes a "broad arbitration clause," as defined by the Supreme Court and the Fourth Circuit. *See Prima Paint Corp. v. Flood & Conklin Mgf.Co.*, 388 U.S. 395, 398 (1967); *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988).

In *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th Cir. 1996), the Fourth Circuit set forth a framework to determine the scope of a broad arbitration clause. The court distinguished arbitration clauses covering only those claims "arising out of" a particular agreement with those clauses covering claims "arising out of or relating to" a particular agreement. *Id.* at 93. The court found that the narrow "arising out of" language applied only to disputes involving "the literal interpretation or performance of the contract," while the "relating to" language "embraced every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Id.*

Under the "significant relationship" standard, the scope of an arbitration clause in one

contract can extend to a dispute arising under a second contract. *Drews Distrib. Inc., v. Silicon Gaming Inc.*, 245 F.3d 347, 350 (4th Cir. 2001). The test for an arbitration clause of this breadth is not whether a claim arises under one agreement or another, but whether a significant relationship exists between the claim and the agreement containing the arbitration clause. *Id*.

Examination of the facts of this case compels the conclusion that Plaintiff's asserted claims are related to the Buyer's Order. First, the plain language of the arbitration clause indicates that its scope extends to any claim "directly or indirectly relating to . . . the vehicle." The alleged excessive loan rate, wrongful denial of refinancing, and misrepresentation of other finance options are directly related to the payment of the vehicle and therefore fall within the scope of the arbitration clause.

Second, even though the claims arise out of the Retail Installment Sales Contract rather than the Buyer's Order, the disputes are "related to" the Buyer's Order. Plaintiff alleges that, on the basis of his race, Koons Tysons steered him to accepting the terms of the Retail Installment Sales Contract and trapped him in a predatory loan. Although Plaintiff alleges only racial discrimination associated with the Retail Installment Sales Contract, not the Buyer's Order, the Buyer's Order intertwines with the Retail Installment Sales Contract, and they are inseparable parts of the same transaction. These two contracts were signed on the same day by the same parities, governing a transaction involving the same vehicle. In addition, the Buyer's Order makes reference to the Retail Installment Sales Contract, and, most significantly, expressly makes the sale of the vehicle contingent upon the approval of the Retail Installment Sales Contract.[2] Thus, it is clear that the instant claims over the Retail Installment Sales Contract are closely related to the Buyer's Order.

---

[2] The Buyer's Order states that "if that proposed retail installment sale contract is not approved under the terms agreed to with dealer, dealer may cancel this sale and any down payment and/or trade-in purchaser submitted will be returned to purchaser." Pl.'s Opp'n to Defs.' Mot. to Stay Ex. B., ¶ 10.

Finally, even if there is an ambiguity, this Court should interpret the contract in favor of arbitration. *Moses H. Cone Mem'l Hops.* 460 U.S. at 24-25 (1983). The Retail Installment Sales Contract is silent on the issue of arbitration. Nothing prevents the arbitration clause in the Buyer's Order from being read into the Retail Installment Sales Contracts. This silence on the issue of arbitration must be resolved in favor of arbitration. *Cara's Notions, Inc., v. Hallmark Cards, Inc.*, 140 F.3d 566, 571 (4th Cir. 1998).

For all these reasons, this Court concludes that the scope of the arbitration clause in the Buyer's Order extends to the instant dispute.

### B. The Enforceability of the Arbitration Agreement

Plaintiff also alleges that the arbitration provision is unconscionable because of Defendants' discriminatory and fraudulent conduct. Specifically, Plaintiff argues that if Defendants had not targeted him because of his race, misled him regarding his credit status, and impelled him to enter into the Retail Installment Contract through misrepresentations, he would not have entered the financing agreement. Furthermore, Plaintiff emphasizes that the discriminatory and unconscionable nature of the Retail Installment Contract relates directly to the arbitration provision, because if Plaintiff had arranged his own financing, his contract with his lender would have no relationship with the Buyer's order, and the arbitration provision would not have been read into the financing contract. As a result, if the arbitration provision is read into the financing agreement, it will be a direct result of the discriminatory acts and misrepresentations that steered Plaintiff into accepting Defendants' arranged Retail Installment Contract.

The Supreme Court has recently decided that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause," is not a basis for avoiding arbitration, but

rather is an issue that "must go to the arbitrator." *Buckeye Check Cashing v. Cardegna*, 126 S.Ct. 1204, 1210 (2006). The *Cardegna* Court explained that efforts to avoid arbitration based upon claims of contract illegality fell into two categories: (1) specific challenges to the legality of the agreement to arbitrate, and (2) challenges to the legality of the contract as a whole. *Id*. at 1208. The prior category provided a legitimate basis for avoiding arbitration, the latter did not. Thus, the Court explained that "unless [a] challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id*. at 1209.

Plaintiff's unconscionability argument is not directly solely at the arbitration provision, but is instead directed at the Retail Installment Contract and the Buyer's Order as a whole. Plaintiff does not alleged unfairness of any specific arbitration rules, such as selection of a panel or notice requirements. Instead, Plaintiff argues that he was induced to accept the whole contact, including the arbitration clause, by Defendants' misrepresentations. This argument does not constitute an attack solely against the arbitration provision, but rather the contract as a whole. Therefore, according to the Supreme Court's holding in *Cardegna*, the issue should go to the arbitrator first.

### III. CONCLUSION

For all of the aforementioned reasons, the Court will GRANT Defendants' Motion to Stay Proceedings in Favor of Arbitration [12]. An Order consistent with this Opinion will follow.


Date:   April 21, 2006                                             /s/
                                                Alexander Williams, Jr.
                                                United States District Court